**WHITE & CASE**

January 27, 2026

**VIA ECF**

Hon. Martin Glenn
Chief United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408
mg.chambers@nysb.uscourts.gov

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

Re:   *In re: ARD Finance, S.A., Case No. 25-12794 (MG) (Bankr. S.D.N.Y)*

Dear Chief Judge Glenn,

We write on behalf of the Ad Hoc Group of PIK Noteholders (the "PIK AHG"), pursuant to Local Rule 7037-1(b) and Your Honor's Chambers' Rules, to respectfully request a pre-motion discovery conference to address an ongoing discovery dispute with ARD Finance, S.A. (the "Chapter 15 Debtor").  As set forth below, the Chapter 15 Debtor has still not fully complied with this Court's order (the "RIA Order") entered during the January 13, 2026 discovery conference (the "Discovery Conference") requiring production of the Restructuring Implementation Agreement (the "RIA").

*Procedural Background Since the Discovery Conference*

The RIA Order was clear and unambiguous, requiring the Chapter 15 Debtor to produce the RIA as it was defined in the PIK AHG's January 7, 2026 letter to the Court (the "January 7 Letter"). Indeed, during the Discovery Conference, the Chapter 15 Debtor did not ask for any additional clarification as to what needed to be produced, seek a delay to comply with the Court's order, or request a protective order from the Court to govern the production.  As such, because the RIA is an "off-the-shelf" document, the PIK AHG expected it would be produced immediately.  Yet, having heard nothing from the Chapter 15 Debtor for two days, on January 15, counsel to the PIK AHG had to request that the Chapter 15 Debtor confirm it would produce the "Restructuring Implementation Agreement (along with any of its schedules or exhibits) this morning."  Counsel to the Chapter 15 Debtor responded that "[w]e expect to produce the RIA either tomorrow [Friday] or Tuesday"—up to a full week after the Discovery Conference—"after we have a protective order in place."  This was the first time the Chapter 15 Debtor raised the issue of a protective order in this case, despite the fact that the parties had participated in multiple discovery meet-and-confers and the Chapter 15 Debtor had already made an initial document production on December 31 (all

Hon. Martin Glenn
January 27, 2026

WHITE & CASE

of which documents included a "confidential" footer). While the Chapter 15 Debtor described the draft protective order it circulated as "standard," the Chapter 15 Debtor specifically prohibited the use of the RIA in any other pending litigation involving the parties, including in the foreign main proceeding.[1]

Consistent with the PIK AHG's view that this Chapter 15 proceeding is to be "harmonized" with the restructuring proceeding in Luxembourg (the "JRP") as well as the other associated litigations, on January 16, counsel to the PIK AHG sent its draft protective order markup which included language permitting the parties to use documents produced in the Chapter 15 discovery in any court with appropriate jurisdiction over the parties' dispute (including the JRP), provided that such court would maintain confidentiality. While the protective order was being negotiated, the PIK AHG again requested that, in the interest of time, the full RIA be produced attorneys' eyes only ("AEO") to four White & Case attorneys involved in the Chapter 15 case.[2]

Notwithstanding any of the foregoing, over the next several days, the Chapter 15 Debtor (1) refused to produce the RIA on an AEO basis; (2) newly characterized the RIA as "highly confidential," and (3) stated that if the PIK AHG wanted to use the RIA in Luxembourg it would need to seek the RIA's production there. On January 19, to prevent further stalemate, the PIK AHG sent a revised draft of the protective order to the Chapter 15 Debtor and reserved all rights, including to challenge its confidentiality designation and to seek expanded use of the RIA once it had an opportunity to review the document.

On January 20, a full week after the Discovery Conference, the Chapter 15 Debtor finally (1) filed the protective order (without any further revision to the markup from the PIK AHG), *see Stipulated Confidentiality and Protective Order* [Dkt No. 34] (the "Protective Order") and (2) produced a partial RIA—an unexecuted version of the agreement as of November 11, 2025 and two of sixteen schedules thereto which are also unsigned, undated, and not fully populated with critical information. To set the stage, the RIA as produced is a 95-page, English law-governed agreement between more than twenty-two (22) named parties, which describes a highly choreographed, multi-step process of transfers and agreements involving the Chapter 15 Debtor and its assets, and its owner. That agreement specifically contemplated the accession to it by the Chapter 15 Debtor and required the filing by the Chapter 15 Debtor of the JRP. Beyond its 95 pages, the RIA explicitly incorporates sixteen schedules, at least some of which appear to attach additional exhibits, and also references several other "Transaction Documents."

On January 21, after reviewing the Chapter 15 Debtor's production, the PIK AHG requested that the Chapter 15 Debtor produce the complete, executed RIA, including all schedules and other exhibits and attachments thereto, consistent with the RIA Order, as well as to follow up regarding scheduling issues with respect to the deposition and hearing on the recognition motion. On January 22, the Chapter 15 Debtor responded that it would not produce any additional documents.

---

[1] As described in the correspondence, the PIK AHG has since the Discovery Conference commenced a satellite litigation against its collateral agent in Luxembourg, in which the Chapter 15 Debtor is named as a nominal party.

[2] That AEO request was first made on January 15, 2026.

2

Hon. Martin Glenn
January 27, 2026

**WHITE & CASE**

On January 23, the PIK AHG wrote to once more request that the Chapter 15 Debtor produce all the schedules and other attachments to the RIA (which were expressly included and incorporated by reference into the Agreement) at the time of the Chapter 15 Debtor's accession to the RIA. The PIK AHG also described with particularity its objection to any designation of the RIA as confidential under the Protective Order and requested that the Chapter 15 Debtor de-designate the RIA. Additionally, the PIK AHG requested the Chapter 15 Debtor follow up on certain gating issues so that the PIK AHG could prepare for the two depositions scheduled for February 9, including identifying which of the Chapter 15 Debtor's two witnesses would handle each pending 30(b)(6) topic. Although the PIK AHG offered to meet-and-confer on each of its three requests over the weekend, and followed up on January 25, the Chapter 15 Debtor has refused to engage.

### I. *The Court's Ruling Required Immediate Production of the Entire RIA and Precludes Selective Withholding of Schedules and Other Exhibits Thereto*

As noted, at the Discovery Conference, the Court ordered the foreign representative to produce a copy of the RIA, as defined by the PIK AHG in its January 7 Letter. The Chapter 15 Debtor has now interpreted the Court's order as requiring only that the Chapter Debtor provide the "RIA itself" and schedules "relevant to the issue of ARDF's endorsement of the RIA." The Chapter 15 Debtors' interpretation of the Court's order is wrong for at least two reasons.

*First*, the text of the RIA states unambiguously that "this Agreement includes all schedules and other attachments hereto." According to basic principles of contractual interpretation and construction under English law—which governs the RIA—the schedules or exhibits to the RIA are considered a part of the RIA itself and are incorporated by reference.[3]

*Second*, even if the Court meant only for the Chapter 15 Debtor to produce the schedules and exhibits directly relevant to the Chapter 15 Debtor's endorsement of the RIA (which the PIK AHG contests), many of the missing schedules are, on the face of the partially produced RIA, directly relevant to understanding what the Chapter 15 Debtor agreed to do when it endorsed the RIA. For example, it is impossible to imagine the Company Parties (Schedule 1), the Closing Conditions Precedent (Schedule 2), the Conditions Subsequent (Schedule 14), and the PIK Exchange Agreement (Schedule 8) are not relevant to the purported transfer of the Chapter 15 Debtor's assets to the creditors of its former subsidiaries, as described in the January 7 Letter. In sum, the entire RIA, including the schedules, attachments, and signatures thereto must be produced.

---

[3] The English law approach to construing contracts is well established and has been laid down in a series of House of Lords and Supreme Court decisions culminating in *Wood v Capita*. [2017] AC 1173 (SC) at [8]-[13]. Textual analysis (i.e., a focus on the meaning of the words used) is generally the primary and most useful tool of interpretation. *Arnold v Britton* [2015] AC 1619 (SC) at [17]. That is especially so in the case of professionally drafted and sophisticated contracts. If the contract language is clear, the court will not reinterpret it based on commercial considerations, as the parties are presumed to have intended the results of the words they chose. *Rainy Sky v Kookmin Bank* [2011] UKSC 50 at [23]. It is only where the words the parties have chosen to express their bargain give rise to genuine ambiguity that extraneous factors such as factual matrix (i.e., the factual context in which the parties reached their bargain) and commercial common sense tend to become significant in determining the meaning of the contract.

Hon. Martin Glenn
January 27, 2026

**WHITE & CASE**

## II. The RIA Is Not Confidential Under the Protective Order

The Chapter 15 Debtor has made a blanket designation of its productions as "Confidential." Pursuant to the Protective Order, a "Producing Party may designate material as Confidential, in whole or in part, only if it determines reasonably and in good faith that such designation is necessary to protect the Producing Party's interest in information that is proprietary, a trade secret, or otherwise sensitive and non-public financial or business information; that is of a personal or intimate nature regarding any individual; or that is subject to a contractual or other duty of confidentiality." Because the RIA does not appear to contain any proprietary information, trade secrets, other sensitive, non-public financial or business information, or personal or intimate information, the Court should order the removal of the confidential designation of the RIA, as provided it may under the Protective Order, for at least three reasons.

*First*, the Chapter 15 Debtor has not itself treated the transactions documented in the RIA as confidential. Indeed, on November 12, 2025, the Chapter 15 Debtor and Ardagh Group S.A. issued a press release on that date announcing the close of the Recapitalisation Transaction which the RIA governs.

*Second*, the RIA is not confidential according to its terms. The transaction(s) governed by the RIA have been closed for more than two months. By its terms, the RIA terminates—subject only to specified provisions—upon the "Recapitalisation Effective Time." Notably, the RIA's confidentiality provision is not among those provisions that survive termination, and therefore the Chapter 15 Debtor is under no obligation to treat the RIA as confidential.

*Third*, even if certain parts of the RIA include "Confidential" information under the Protective Order and the Bankruptcy Code, the entire RIA should be produced, and only truly "confidential" information (if any) must be specifically marked and maintained under seal. We are likely headed to a contested hearing on February 10th, in which the full RIA will be presented to the Court. Section 107(a) of the Bankruptcy Code establishes a strong presumption of public access to documents filed in a bankruptcy case, and the burden is on the designating party to justify protection under the narrow exceptions set forth in Section 107(b). The exceptions provided for in Section 107(b) are "narrow" due to "the strong public policy in favor of open court records." And, as a practical matter, given this Court's preference for public access to documents, it is likely the Court will allow public discussion of even the partially produced RIA during the recognition motion on February 10th and the parties can maintain confidentiality over any properly protected material.

## III. The Court Should Issue an Order with Strict Time Limits for Production and Consequences for any Failure to Adhere to the Court's Order

While the Chapter 15 Debtor has represented that it aims to be cooperative and has taken the position that the Chapter 15 proceeding should be relatively simple, it took the Chapter 15 Debtor a full week to attempt to comply (insufficiently) with the Court's unambiguous order to produce a single, 95-page off the shelf document. And, as of the filing of this letter, the Chapter 15 Debtor has now since refused to engage with the PIK AHG over whether it will, in fact, comply with the

Hon. Martin Glenn
January 27, 2026

WHITE & CASE

RIA Order. While the PIK AHG believes the Chapter 15 Debtor has been in contempt of the Court's ruling, at the very least the Court should be skeptical of accepting any more of the Chapter 15 Debtor's platitudes of cooperation and compliance.

As such, the PIK AHG respectfully requests that the Court should order a strict deadline of close of business on Wednesday, January 28, 2026 for the Chapter 15 Debtor to produce the RIA, including all signatures, schedules, and other attachments and exhibits, in order that the PIK AHG may prepare for depositions of the Chapter 15 Debtor on February 9 and the recognition hearing on February 10.

*   *   *

In sum, the PIK AHG seeks a conference with the Court to discuss these issues and, if necessary, to set a briefing schedule for a motion to compel the Chapter 15 Debtor to (1) produce the RIA, including all signatures, schedules, and other attachments and exhibits thereto within two business days so that the PIK AHG may have time to prepare for depositions and a hearing on the recognition motion; and (2) order the de-designation of the RIA as "confidential."[4]

Respectfully submitted,


*/s/ J. Christopher Shore*

**J. Christopher Shore**
Partner

**T** +1 212 819 7977
**E** cshore@whitecase.com


cc:   Andrew K. Glenn
      Jonathan H. Friedman
      Naznen Rahman

---

[4] The PIK AHG notes that, given discussions with the Chapter 15 Debtor remain unsettled with respect to certain issues concerning the depositions of the Chapter 15 Debtor's witnesses in support of the recognition hearing, including whether or not it will produce a witness to testify about the topic "the RIA." The PIK AHG reserves the right to supplement this letter brief and any future motion to compel.

5